UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| LARRY L. HOPKINS, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| vs. | ) | Case No. 1:13CV126 ACL |
| CHARLES REED, et al., | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the Plaintiff's Motions to Compel (Docs. 53, 57, 58), Motion for the Appointment of Counsel (Doc. 68), and Request for an Order to Allow Plaintiff (Doc. 75) the opportunity for a subsequent review of discovery. Defendants have responded to each of these motions and they are ripe for disposition.

## **I. Background**

The Plaintiff, Larry L. Hopkins, alleges that after making a trip to the medical unit at the Southeast Correctional Center (SECC) on September 4, 2012 for back pain, officers used excessive force against him in violation of his constitutional rights. In the pending motions, Hopkins claims that he has not been given the opportunity to review all of the video footage that is relevant to the use of force incident, nor all of the written reports concerning the incident. The Defendants have declined to make a copy of the written reports for Hopkins; they indicate his access to said reports is not allowed "pursuant to Missouri Department of Corrections procedures." (Doc. 80.) Nevertheless, those reports have been made a part of the public record in this case as they were attached

to the Defendants' Motion for Summary Judgment as supporting exhibits. *See*, Doc. 79-6 at 2-11 (produced at Bates Nos. 15-24; the documents include the nine-page "Investigation Report" completed by Brennan Gibson on March 12, 2013 and the one-page Inspector General's "Investigation Closing and Disposition" conclusion dated April 4, 2013) and Doc. 79-7 at 2-35 (produced at Bates Nos. 46-79; the documents include numerous written and typed reports prepared by the staff involved in the alleged use of force incident, as well as the Warden's and Use of Force Committee's documentation of the institutional response to the incident).

The Defendants also indicated that Hopkins was given an opportunity to "view[] all three camera angles" of the incident outside of the medical unit "multiple times" on September 2, 2014. (Doc. 82-1 at 1), as well as "an investigative report submitted by Investigator II Brennan Gibson regarding this use of force, reports submitted by staff members involved," *id.*, and other information. The following day, Hopkins was able to listen to "audio recordings of interviews of staff involved," *id.*, in the use of force incident.

During a status conference on January 13, 2015, Hopkins explained that the actual use of force incident was not really visible on the video footage that he was allowed to review and furthermore, that he believed there should have been video footage available from additional cameras. Counsel for Defendants replied that she was not aware of additional camera views being available, but that she could check on it. She further stated that if there was a camera within the medical unit any footage that may have been recorded would likely no longer be available. Counsel for Defendants indicated that she

would inquire as to any changes made to the security cameras in the areas in question and report back to the Court.

On January 26, 2015, Brennan Gibson, who is "familiar with the security camera system utilized throughout" the SECC prepared an Affidavit and stated that "[a]ll video footage available regarding the incident. . .on September 4, 2012 was collected, viewed, and ultimately provided within the investigation conducted on behalf of the Office of the Inspector General."  (Gibson's Affidavit was attached to Doc. 74, "Notice to Court" filed on January 27, 2015, stamped "Hopkins v. Reed, et al. 0085.)

The Court received and reviewed a copy of the video footage that was available and reviewed by Gibson and Hopkins.  There are three video clips.  The first clip is from "C133" which is a continuous video of the view of the hallway immediately outside of the medical unit entry doors and one wall in the corridor that leads to the front exterior door of what is believed to be housing unit 1; the timeframe included is from 10:28:55 a.m. to 10:36:33 a.m.  This clip shows Hopkins apparently using the wall for support as he leaves the medical unit, followed by him going down onto his hands and knees, and then communicating with a corrections officer while on one knee.  The officer and Hopkins converse and then the officer appears to assist Hopkins to his feet while at the same time working to place Hopkins' hands behind his back in restraints.  Ultimately, Hopkins falls to the ground on his stomach with his legs stretched out behind him.  Hopkins appears to lie very still for approximately fourteen seconds while the officer is applying the restraints, but then a struggle begins during which time additional officers assist in restraining Hopkins.  The only part of the struggle that is visible on the video

3

footage that was provided is from roughly Hopkins' knees to his feet. Hopkins upper body movements, as well as the movements of the primary restraining officer are not visible. Eventually, the officers place Hopkins in a wheelchair, but Hopkins again struggles with the officers. The wheelchair was taken away and officers bring back boards to the location. The activity involving Hopkins is out of view of the camera view for C133.

The second clip is from "C71," another continuous video of the "front exterior HU1 door XC120" to what appears to be an outdoor corridor; the time stamp on the clip reveals that it shows the activity in that location between 10:34:11 a.m. to 10:35:47 a.m. That clip shows corrections officers on either side of Hopkins, more or less carrying him through the corridor with Hopkins' feet dragging. Another apparent struggle occurs just outside the view of the security camera.

The third and final clip that has been provided is from "C277" and depicts activity in what is identified as the central A-Wing of Housing Unit 2 between 10:38:56 and 10:44:32. During the course of this clip, Hopkins is carried in on a backboard, the backboard is placed on the ground, Hopkins is released from the backboard, and then placed on a bench to which he was handcuffed. A nurse from the medical unit communicates with Hopkins while he is seated on the bench.

Although a viewer of the video clips provided is not able to view all of the activity between Hopkins and SECC staff, because of what is visible in the frame of the security camera that created each of the clips, the videos are continuous and do not appear to have been altered or modified.

In his motions, Hopkins requests that the Court compel the Defendants to allow him to view all of the video footage of the use of force incident that occurred on September 4, 2012, including his trip to the medical unit in the wheelchair before the incident occurred, as well as any video footage within the medical unit. Hopkins also requests the appointment of counsel to represent him since he is without sufficient funds to hire an attorney and because of the complexity of the case, his lack of legal education, and the difficulty he has had with being able to view the discovery requested.

## II. Plaintiff's Discovery Requests

In his motions to Compel (Docs. 53, 57) and Response to the Defendants' Response (Doc. 58), Hopkins repeatedly requests the opportunity to review "all" relevant video footage, including recordings from any security cameras "inside" the medical unit, as well as when he was "being pushed/e[s]corted from housing Unit #5 to medical." Hopkins made his initial requests for said material on February 18 and July 23, 2014. *See also*, Docs. 30, 47 (Documents 30 and 47 were docketed as "Exhibit A" and "Supplemental" by Plaintiff, respectively. The captions placed on the documents by Hopkins, however, specifically identified the pleadings as "Plaintiff's First Request for Production of Documents" and "Plaintiff's Second Request for Production of Documents," respectively.).

Hopkins acknowledges that he reviewed the footage that was provided to the Court, which can be described as follows:

| Security Camera | Location | Time-Frame |
| --- | --- | --- |

| | | |
|---|---|---|
| C133 | outside medical unit | 10:28:55 to 10:36:33 |
| C71 | exterior door of HU #1 | 10:34:11 to 10:35:47 |
| C277 | HU #2 Central Wing | 10:38:56 to 10:44:32 |

During the status conference, Counsel for Defendants indicated that an inquiry would be made regarding the number of cameras that were in operation in the corridor outside of the medical unit at the time of the incident, as well as whether there was a security camera inside the medical unit. The Affidavit provided by Brennan Gibson includes a statement that "[a]ll video footage available regarding the incident. . .on September 4, 2012 was collected, viewed, and ultimately provided within the investigation conducted on behalf of the Office of the Inspector General." That statement does not address the question of whether additional security cameras were in operation in the corridor outside of the medical unit, as well as the corridor outside of the "front exterior HU1 door." Furthermore, the time stamps of the video footage provided reveals that the Defendants have not disclosed footage from any security camera that depicts what occurred between 10:35:48 a.m. (the end of the second clip) and 10:39:18, which is when the officers can be seen carrying Hopkins into the central wing of HU #2 on a backboard.

The Defendants suggest that since Hopkins was given the opportunity to review the three video clips and written reports on one prior occasion that his Request for an Order directing the SECC Litigation Coordinator to arrange a time for him to review evidence in this case should be denied as moot. (Docs. 56, 82.)

6

The record supports that Hopkins has requested the opportunity to view all video footage of the incident in question, including footage of his trip to the medical unit before the incident occurred, as well as all relevant written reports. Although Hopkins did not specifically ask how many security cameras were in place within each of the corridors wherein Hopkins was restrained by corrections officers, it would be fair and reasonable to provide such information in light of the complaint and Hopkin's request for "all" video footage.

Upon review of the pleadings, the Court finds that Hopkins has made the necessary effort to resolve this discovery dispute prior to seeking court intervention. Although Defendants have stated that they provided all documents and footage that available, it is not clear to the Court whether that is an accurate statement. Rule 34 provides for the production of documents and things within "the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Since the Defendants have not addressed the situation regarding whether additional security cameras were in operation in the areas of interest, the Court must compel the Defendants to identify what security cameras were in operation within the medical unit, in the corridor outside of the medical unit, in the corridor outside of the exterior door of HU #1, as well as any other areas that security cameras may have captured the conduct of all persons involved in the use of force incident.

Furthermore, the Defendants shall provide Hopkins with an opportunity to review all of the written reports and documents regarding the use of force incident in question.

If upon further review of Defendants' obligation to supplement disclosures as described herein, it appears all relevant video footage has been provided, the Court will entertain a motion for reconsideration.

If Hopkins needs additional time to review any supplemental documents and footage provided by Defendants, he may request an extension of time to respond to Defendants' recently-filed Motion for Summary Judgment.

**III. Plaintiff's Motion and Request for Appointment of Counsel**

Plaintiff has also requested the appointment of counsel. (Doc. 68 and 75.) The appointment of counsel for an indigent pro se plaintiff lies within the discretion of the Court. Indigent civil litigants do not have a constitutional or statutory right to appointed counsel. *Stevens v. Redwing*, 146 F.3d. 538, 546 (8th Cir. 1998); *Edgington v. Mo. Dept. of Corrections*, 52 F.3d. 777, 780 (8th Cir. 1995); Rayes v. Johnson, 969 F.2d. 700, 702 (8th Cir. 1992). Once the plaintiff alleges a prima facie claim, thereby surviving a frivolity review pursuant to 28 U.S.C. §1915(d), the Court must determine the plaintiff's need for counsel to effectively litigate his claim. *Edgington*, 52 F.3d. at 780; *Natchigall v. Class*, 48 F.3d. 1076, 1081-82 (8th Cir. 1995); *In re Lane*, 801 F.2d. 1040, 1043 (8th Cir. 1986). The standard for appointment of counsel in a civil case involves the weighing of several factors which include the factual complexity of a matter, the complexity of legal issues, the existence of conflicting testimony, the ability of the indigent to investigate the facts, and the ability of the indigent to present his claim. *See McCall v. Benson*, 114 F.3d 754 (8th Cir. 1997); *Stevens*, 146 F.3d. at 546; *Edgington*, 52 F.3d. at

780; *Natchigall*, 48 F.3d. at 1080-81; *Johnson v. Williams*, 788 F.2d. 1319, 1322-1323 (8th Cir. 1986).

In this matter, the Court finds that appointment of counsel is not mandated at this time.  Hopkins has demonstrated his ability to litigate this case as evidenced by his pleadings, including discovery motions, and although his efforts to determine what additional evidence is available have been until now unsuccessful, his efforts have resulted in this Order directing the Defendants to provide the requested materials, if available.  At this point, nothing has occurred that indicates any need to appoint counsel.  This action appears to involve straightforward questions of fact regarding a single incident, and plaintiff appears able to present and investigate his claim and file pleadings and disclosures according to the Federal Rules of Civil Procedure.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motions to compel (Docs. 53 and 57) the Defendants to produce the discovery requested (Docs. 30, 47), and motion to review discs containing video footage (Doc. 75) are **GRANTED**.

**IT IS FURTHER ORDERED** that the Defendants shall produce for the Plaintiff's review in the SECC Litigation Unit **on or before March 17, 2015**, all of the video footage that has been requested by the Plaintiff including any video of the Plaintiff's trip to the medical unit.  The Plaintiff shall be given one more opportunity to fully review **all of the video footage that is relevant to his Complaint**.

**IT IS FURTHER ORDERED** that the Defendants shall disclose in a "Notice to the Court," with a copy to the Plaintiff, whether additional security cameras were in

operation in the areas of interest (*i.e.*, corridors outside of the medical unit, corridor outside of the exterior door to housing unit #1, and inside the medical unit), as well as any other areas that security cameras may have captured the conduct of all persons involved in the use of force incident between 10:28 a.m. and 10:45 a.m. on September 4, 2012). **Said Notice must be filed no later than March 13, 2015.**

**IT IS FURTHER ORDERED** that Defendant's shall **immediately** provide Plaintiff with a copy of all of the written reports in Exhibits F and F-1 to the Defendants' Motion for Summary Judgment, as well as Brennan Gibson's Affidavit (Bates Stamped 0085).

**IT IS FURTHER ORDERED** that Defendant's shall provide to the Court for *in camera* review a diagram of the SECC that depicts the Plaintiff's travel from his original housing unit to the medical unit on the morning of September 4, 2012, and then to the central wing of Housing Unit #2 where the use of force incident concluded. The diagram shall include markings that identify the location of **all** security cameras that were in operation in the relevant corridors of the SECC on September 4, 2012, as well as notations regarding any changes or additions to the location of security cameras after that date. **This information must be provided to the Court no later than March 13, 2015.**

**IT IS FINALLY ORDERED** that Plaintiff's request for counsel (Doc. 68) and his subsequent such requests in his other motions are **DENIED** without prejudice.

                                         /s/ Abbie Crites-Leoni
                                         ABBIE CRITES-LEONI
                                         UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of March, 2015.