UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

LARRY L. HOPKINS,                    )
                                     )
                    Plaintiff,       )
                                     )
v.                                   )          Case No.  1:13CV126 ACL
                                     )
CHARLES REED, et al.,                )
                                     )
                    Defendants.      )

## MEMORANDUM AND ORDER

Plaintiff, an inmate at the Southeast Correctional Center ("SECC"), brought this action

*pro se* under 42 U.S.C. § 1983 against multiple defendants employed at SECC in their individual

capacities, alleging violations of his constitutional rights.  This matter is before the Court on the

Motion for Summary Judgment of Defendants Charles Reed, Benny Thurston, Christopher

Cooper, Kimberly Irby, and Paula Phillips-Reed ("Defendants").  (Doc. 77.)  Also pending is

Plaintiff's Motion to Appoint Counsel.  (Doc. 116.)  For the following reasons, the Court will

grant Defendants' Motion for Summary Judgment.

## I.    Background

In his Second Amended Complaint, Plaintiff alleges that Defendants Reed, Thurston, and

Cooper violated his Eighth Amendment rights when they physically assaulted him and denied

him medical treatment for his serious physical injuries.  Plaintiff alleges that Defendant Irby

failed to protect him when Defendants Reed, Thurston, and Cooper assaulted him.  Plaintiff

claims that Defendant Phillips-Reed retaliated against him in violation of his First Amendment

rights for filing a complaint against Defendant Reed who, at the time, was dating Defendant Phillips-Reed.[1]  Plaintiff seeks monetary and injunctive relief against Defendants.

In their Motion for Summary Judgment, Defendants argue that they are entitled to judgment as a matter of law because Plaintiff has not established that Defendants violated Plaintiff's constitutional rights.  Defendants also contend that Plaintiff failed to properly exhaust his administrative remedies.  Defendants further argue that they are entitled to qualified immunity for their actions.

## II.     Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.  317, 322 (1986).  The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts.  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A genuine issue of material fact is not the "mere existence of some alleged factual dispute between the parties."  *State Auto. Ins. Co. v. Lawrence,* 358 F.3d 982, 985 (8th Cir. 2004).  "Instead, the dispute must be outcome determinative under prevailing law." *Mosley v. City of Northwoods,* 415 F.3d 908, 910–11 (8th Cir. 2005) (internal quotations omitted).  A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for him.  *Anderson*, 477 U.S. at

[1]Defendant Reed and Defendant Phillips-Reed have since married.  *See* Doc. 78, p. 15 n. 2.

249; *Celotex*, 477 U.S. at 324. "If 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the nonmoving party – as long as those facts are not 'so blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Reed v. City of St. Charles, Mo*., 561 F.3d 788 (8th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the nonmoving party and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000). The court is required, however, to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

### III.    Plaintiff's Request for Counsel and for Additional Discovery

Before addressing the merits of Defendants' Motion for Summary Judgment, the Court will address preliminary matters raised by plaintiff in his Motion to Appoint Counsel. On June 15, 2015, Plaintiff filed a "Notice to the Honorable Court," which was docketed as a "Motion to Appoint Counsel." (Doc. 116.) In this motion, Plaintiff requests that the Court appoint counsel so that he can "respond with [his] issues in dispute contesting the affidavit of Paula Phillips-Reed that she submitted approximately about or around January 2015." (Doc. 116 at 1.) Plaintiff

states that he seeks to use statements of non-party staff witnesses to support his reply to Defendant Phillips-Reed's Affidavit, but these witnesses will not provide statements without being ordered to do so by a court-issued subpoena. Plaintiff requests that the Court appoint counsel so that counsel can obtain additional evidence, including depositions, to oppose Defendants' Motion for Summary Judgment.

Plaintiff's motion will be denied. This matter has been pending since August 2013. The original discovery deadline was July 24, 2014, which was extended to August 15, 2014, after Plaintiff added Paula Phillips-Reed as a Defendant. Plaintiff filed numerous motions to compel. (Docs. 38, 46, 53, 57, 96.) A hearing was held on discovery issues on January 13, 2015, at which Plaintiff appeared via video conference. (Doc. 72.) On January 14, 2015, the Court extended the discovery deadline to February 11, 2015. (Doc. 73.) The Court granted Plaintiff's motions to compel on March 3, 2015, and directed Defendants to produce video footage and reports for Plaintiff's review. (Docs. 83, 89.) Defendants filed the instant Motion for Summary Judgment on February 23, 2015. (Doc. 77.) Plaintiff was granted two extensions of time to file his Response to Defendants' Motion for Summary Judgment (Docs. 85, 94), and was granted leave to file a Response in excess of the page limitation (Doc. 102).

As evidenced by the background provided above, significant delay has occurred as a result of the numerous discovery motions filed by Plaintiff. The deadline for the completion of discovery has been extended on many occasions, and expired on February 11, 2015. The Court has afforded Plaintiff every opportunity to obtain discovery, including extending discovery deadlines, granting his motions to compel, and extending the deadline to file his Response in opposition to Defendants' Motion for Summary Judgment. Plaintiff fails to provide cause to further delay this matter by reopening discovery at this stage of the litigation. Plaintiff has filed

multiple Responses to Defendants' Motion for Summary Judgment, along with additional supporting documentation. It is apparent that Plaintiff understands and utilized the discovery process in this matter and has had adequate time to conduct discovery.

Plaintiff's request for the appointment of counsel will also be denied. There is no constitutional or statutory right to appointed counsel in civil cases. *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). In determining whether to appoint counsel, the Court considers several factors, including (1) whether the plaintiff has presented non-frivolous allegations supporting his or her prayer for relief; (2) whether the plaintiff will substantially benefit from the appointment of counsel; (3) whether there is a need to further investigate and present the facts related to the plaintiff's allegations; and (4) whether the factual and legal issues presented by the action are complex. *See Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986); *Nelson*, 728 F.2d at 1005.

After considering these factors, the Court finds that the facts and legal issues involved are not so complicated that the appointment of counsel is warranted. Plaintiff has been able to prepare and file a plethora of documents on his own behalf. If Plaintiff wished to subpoena non-party witnesses, he should have filed a timely motion before the close of discovery. Thus, the Court will deny Plaintiff's Motion to Appoint Counsel.

## IV. Facts

The following facts are undisputed:[2]

---

[2] The undisputed facts are taken from facts that (1) Plaintiff admitted were undisputed in his response or (2) Plaintiff alleged were disputed but failed to properly and/or directly controvert. The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion with specific references to portions of the record as required by Local Rule 4.01(E) and Federal Rule of Civil Procedure 56(c)(1).

On September 4, 2012, Plaintiff appeared for medical call out in the prison medical unit. At the time, Plaintiff was using a wheelchair due to lower back pain. Plaintiff believed that he was there to obtain pain medication. Instead, Plaintiff was asked to return the wheelchair. Plaintiff had a discussion with the nurse in the medical unit, during which he told her that he needed pain medication, and that he did not want to return the wheelchair. Plaintiff stated to the nurse that the doctor was wrong in determining that Plaintiff did not require medication and that he needed to return the wheelchair.

Defendant Benny Thurston is a Corrections Officer I ("COI") at SECC and was assigned to work in the medical unit on September 4, 2012. Defendant Thurston told Plaintiff that he needed to leave the medical unit and return to his housing unit. Plaintiff told Defendant Thurston he could not walk back to his housing unit because he was in too much pain and tried to self-declare a medical emergency. Defendant Thurston directed Plaintiff to sit down in a chair in the medical unit waiting room. Defendant Thurston contacted Defendant Reed to tell him that Plaintiff was refusing to leave the medical unit. At this point, Plaintiff stood up to leave the medical unit.

As Plaintiff was beginning to leave the medical unit, Defendant Charles Reed, a Corrections Officer II ("COII") assigned to SECC, arrived at the medical unit in response to Defendant Thurston's call. Defendants Reed and Thurston directed Plaintiff to return to his housing unit. Plaintiff walked slowly in the hallway outside of the medical unit, holding on to the wall as he walked. Plaintiff then knelt down on the floor. Plaintiff started to stand and

Defendant Reed took Plaintiff's left arm from behind.[3]  Defendant Reed had both of Plaintiff's arms behind his back when Plaintiff fell to his knees.

The parties disagree as to whether the Plaintiff began to kick while the Defendants placed his wrists and ankles in restraints.  Plaintiff's legs were bent back at the knees and placed in restraints by Defendant Thurston and by Defendant Christopher Cooper, a Maintenance Worker II assigned to SECC.[4]  Defendants Reed and Cooper attempted to return Plaintiff to a standing position, but Plaintiff would not or could not stand on his own.  Defendant Kimberly Irby, a COI assigned to SECC, brought a wheelchair to the location of the incident and positioned it with its wheels locked.

Defendants Reed, Cooper, and Thurston assisted Plaintiff into the wheelchair.  Defendants had difficulty pushing the wheelchair once Plaintiff was seated.[5]  Defendant Irby retrieved a backboard and Plaintiff was placed on the backboard.  Defendants Irby, Reed, and Cooper carried Plaintiff into Housing Unit # 2[6] and placed the backboard on the day room floor.  Plaintiff was assisted to his feet and then secured to the restraint bench.

---

[3]  Defendants claim this was done with no force.  Plaintiff claims that Defendant Reed "knocked [his] arm off the wall which caused Plaintiff to go down to the floor."  (Doc. 101 at 4.)  Plaintiff added that when he "started to stand-back-up, Defendant Reed forcefully grabbed [Plaintiff']s arm", pulled him up off the floor while twisting it behind his back, and forcefully pushed Plaintiff against the wall.  (Doc. 101 at 5.)

[4]  Plaintiff claims that "Defendant Reed forcefully placed his knee in Plaintiff's paining back." (Doc. 101 at 5.)

[5]  Defendants claim that they could not push the wheelchair because Plaintiff would not lift his feet off of the ground.  Plaintiff disputes that he would not lift his feet off his ground.  The video does not capture Plaintiff's legs when he was in the wheelchair, although it does show that Defendants had difficulty pushing the wheelchair and that Plaintiff may have been passed out while in the wheelchair.  Whether Plaintiff refused to lift his feet off of the ground is ultimately immaterial.

[6]  In Plaintiff's Statements of Uncontroverted Material Facts, Plaintiff claims that Defendant Cooper "dropped his side of the back board and caused Plaintiff to hit his head on the concrete ground."  (Doc. 101 at 6, ¶ 23.)  Plaintiff's original "Complaint Background Summary" provides

Plaintiff requested an Informal Resolution Request ("IRR") form on September 12, 2012. Plaintiff claims that he completed the form, alleging that he had been assaulted by staff and denied medical treatment, but the form was misplaced or lost by prison staff. On October 21, 2012, Plaintiff filed an IRR asserting that he had been assaulted by staff and that staff displayed deliberated indifference to his serious medical needs. The IRR was denied on the basis it was untimely filed. Plaintiff filed a Grievance on November 28, 2012. Prison officials denied Plaintiff's Grievance on the merits, finding that Plaintiff failed to provide any evidence that staff actions were excessive. On January 28, 2013, Plaintiff appealed the denial of the Grievance. Prison officials denied the Grievance Appeal on the merits.

On November 26, 2012, Defendant Phillips-Reed, a Functional Unit Manager ("FUM") at the time, called Plaintiff into her office when he was in the sally port area of Housing Unit # 3 and told him to sit down. Plaintiff stated that he wanted to stand. Defendant Phillips-Reed thereafter gave Plaintiff a directive to sit down and Plaintiff complied. Defendant Phillips-Reed told Plaintiff he was being disruptive in the sally port area and instructed him to keep quiet. On or about November 28, 2012, Plaintiff filed an IRR against Defendant Phillips-Reed for harassment. Plaintiff's IRR was denied. On December 18, 2012, Plaintiff filed a Grievance from the IRR, which was denied on January 29, 2013. Plaintiff filed a Grievance Appeal on April 1, 2013, which was denied on May 21, 2013.

On December 20, 2012, Plaintiff was rehired in recreation. Defendant Phillips-Reed reassigned Plaintiff from that job because he did not meet the criteria for the job. On January 23, 2013, Plaintiff filed a Grievance Appeal to Deputy Division Director Dwayne Kempker. The appeal was returned to the SECC grievance officer so that the normal grievance process could be

---

that "one of the COI, let go of side he held; coming only a few inches from banging my head on the concrete." (Doc. 48 at 55.)

followed.  On April 5, 2013, Plaintiff filed an IRR against Defendant Phillips-Reed regarding the alleged retaliation of reassigning him from his recreation job.  On April 18, 2013, the IRR was found to be noncompliant because it was a duplicate of a past IRR.  On May 15, 2013, Plaintiff filed a Grievance.  On May 22, 2013, the Grievance was denied because it was a duplicate complaint.  On July 8, 2013, Plaintiff filed a Grievance Appeal, which was denied on the merits on August 8, 2013.

## V.      Discussion

As previously noted, Defendants argue that they are entitled to judgment as a matter of law because Plaintiff has not established that Defendants violated his constitutional rights. Defendants also contend that Plaintiff failed to properly exhaust his administrative remedies.  In addition, Defendants argue that they are entitled to qualified immunity for their actions.  The undersigned will discuss these claims in turn, beginning with the issue of exhaustion.

## A.      Exhaustion of Administrative Remedies

Defendants first argue that they are entitled to summary judgment on Plaintiff's excessive use of force claim because Plaintiff failed to exhaust his administrative remedies.

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring a § 1983 action unless he has exhausted all available administrative remedies.  42 U.S.C. § 1997e(a). Exhaustion under the PLRA is defined by the prison's grievance procedures.  *Jones v. Bock*, 549 U.S. 199 (2007).  Exhaustion under the PLRA means proper exhaustion, which is in compliance with an agency's deadlines and other critical procedural rules.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  In order for a Missouri prisoner to satisfy this exhaustion requirement, he necessarily must avail himself of the administrative grievance process established by Missouri Department of Corrections:

> To initiate this process, an inmate must file an Informal Resolution Request ("IRR") within fifteen days of the date of the incident giving rise to the IRR. If the inmate is dissatisfied with the response to his IRR, he can file an Offender Grievance within seven working days of receiving the response. If the inmate is dissatisfied with the response to his Grievance, he can file a Grievance Appeal within seven days of receiving that response. The failure to file timely appeal will result in the appeal being considered abandoned. Only after the inmate receives a response to his Appeal is the administrative grievance procedure exhausted.

*Wewerka v. Roper*, No. 4:09CV1973 CDP, 2010 WL 4628093, at *2 (E.D. Mo. Nov. 8, 2010).

*See also Dykes v. Murphy*, No. 4:09CV1062 HEA, 2010 WL 2287496, at *4 (E.D. Mo. Jun. 3, 2010); *Hahn v. Armstrong*, No. 1:08CV0169 LMB, 2010 WL 575748, at *3 (E.D. Mo. Feb. 11, 2010).

Defendant contends that the alleged excessive force incident occurred on September 4, 2012, and Plaintiff did not file an IRR until October 21, 2012. Defendants argue that, because this was well over the fifteen day limit for filing an IRR, Plaintiff has failed to exhaust his administrative remedies as to his excessive force allegations.

In his Response, Plaintiff argues that he filed an IRR regarding the alleged excessive force incident on or about September 12, 2012, but this IRR was misplaced or lost by prison staff. Plaintiff states that he filed another IRR regarding the same incident on October 21, 2012, which was denied on the basis that it was untimely filed. Plaintiff notes that his Grievance and Grievance Appeal were both denied on the merits, and that he therefore exhausted his administrative remedies.

Defendants do not address the issue of exhaustion in their Reply and appear to abandon this claim.

Inmates are excused from exhausting remedies "when officials have prevented prisoners from utilizing the procedure, or when officials themselves have failed to comply with the grievance procedures." *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005.) In addition, "a

grievance that could have been denied for failure to comply with a procedural requirement is nonetheless exhausted for PLRA purposes if the institutional decision-maker instead denied it on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (*per curiam*).

In this case, Plaintiff has presented evidence that he requested an IRR form on September 10, 2012, within the fifteen-day period. (Pl's Ex. A.) Plaintiff claims that he completed the form, alleging that he had been assaulted by staff and denied medical treatment, but the form was misplaced or lost by prison staff. Although Defendants deny that Plaintiff filed the IRR on or around September 12, 2012, it is undisputed that Defendants denied the Grievance and Grievance Appeal from the IRR filed on October 21, 2012 on the merits rather than denying it as untimely. (Pl's Ex. B; Doc. 109 §§ 29, 30.) Thus, Plaintiff has properly exhausted his excessive force claims.

**B.      Excessive Use of Force and Failure to Intervene**

Section 1983 provides a cause of action for a person who is injured as a result of being deprived of "any rights, privileges, or immunities secured by the Constitution" by a person acting under "color of state law." 42 U.S.C. § 1983. Defendants contend that they are entitled to summary judgment because the undisputed facts establish that there was no violation of Plaintiff's constitutional rights. Defendants further argue that Plaintiff's claims are barred by qualified immunity.

"Qualified immunity shields public officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley,* 574 F.3d 491, 495 (8th Cir. 2009). When the defense of qualified immunity has been asserted, the Court evaluates (1) whether defendants violated plaintiff's constitutional rights and (2) whether those rights were

clearly established. *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011). If no constitutional violation occurred, the evaluation ends there. *See Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003). "Without the requisite showing of a constitutional violation, summary judgment is proper because [plaintiff] has failed to establish the existence of an essential element of [his] case." *Id.* Thus, the Court need not reach the question of qualified immunity. *Id.*

"To prove an Eighth Amendment violation, a prisoner must satisfy two requirements, one objective and one subjective." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). The first requirement tests whether, viewed objectively, the deprivation of rights was sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is subjective and requires that the inmate prove that the prison officials had a "sufficiently culpable state of mind." *Id.*

Determining what satisfies the sufficiently serious injury requirement is claim-dependent. *Irving*, 519 F.3d at 446. "Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e. they are using it maliciously and sadistically." *Id.* "The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury." *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Nevertheless, the "Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotations omitted).

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers,* 475 U.S. 312, 319 (1986) (quotation omitted). "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 6–7. *See Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010).

1.      **Defendants Reed, Thurston, and Cooper**

Plaintiff claims that Defendants Reed, Thurston, and Cooper assaulted him without provocation. Specifically, Plaintiff claims that Defendant Reed "started the attack and assault" on him when he "began by manhandling" him while he was suffering from back pain. (Doc. 48, ¶ 56.) Plaintiff alleges that Defendant Thurston "tackled" him from behind, knocking him to the ground, without any provocation." (*Id.* at ¶ 57.) With regard to Defendant Cooper, Plaintiff alleges that Defendant Cooper followed Defendant Reed's command to bend Plaintiff's leg in "the most drastic position" during "the unnecessary attack and assault." (*Id.* at ¶ 58.) Plaintiff also contends that Defendant Cooper dropped the backboard while transporting Plaintiff, which caused Plaintiff to hit his head on the concrete floor. (*Id.* at ¶ 42.)

The Court finds that Defendants Reed, Thurston, and Cooper are entitled to summary judgment on Plaintiff's excessive force claims because Defendants used a minimal amount of force in a good faith effort to maintain and restore discipline and not to sadistically or

maliciously harm Plaintiff.  Plaintiff admits that he was "ordered to surrender" the wheelchair he had been issued by the nurse in the medical unit and that, in response, he questioned the nurse about the order and expressed his need for the wheelchair and for medication.  Plaintiff describes his conversation with the nurse as "peaceful," whereas Defendants characterize the exchange as an argument.  Regardless, it is clear that Plaintiff did not immediately comply with the order and instead questioned the order.  Defendant Thurston witnessed the encounter between Plaintiff and the nurse and intervened by instructing Plaintiff to return to his unit and requesting assistance from Defendant Reed.

The Court has reviewed the video footage (DVD attached as Ex. F-1 to Defendants' Summary Judgment Motion, Doc. 77) provided by Defendants and finds that it refutes much of Plaintiff's account of what transpired as he was leaving the medical unit.  The video shows that Plaintiff fell to his knees on his own, and not due to any physical contact with the Defendants.  When Plaintiff was on his knees, he paused to talk to Defendants before standing up.  The video does not have audio but it is apparent that Plaintiff is emphatic when speaking to Defendants.  It is only after Plaintiff converses with the corrections officers in an emphatic manner that Defendants make any physical contact with Plaintiff.  As Plaintiff began to stand, Defendant Reed took Plaintiff's left arm from behind and then put both of Plaintiff's arms behind his back.  Defendant Reed did not twist Plaintiff's arm nor did he push Plaintiff against the concrete wall.  Plaintiff fell to the ground in the process of Defendant Reed's attempt to place Plaintiff in hand restraints.  At no point did Defendant Thurston "tackle" Plaintiff; Defendant Thurston used his body to assist in restraining Plaintiff's mid-section while Defendant Cooper used his body to physically restrain Plaintiff's legs.

The video reveals that Defendant Reed applied a minimal amount of force when he initially attempted to secure Plaintiff's arms and that Defendant Reed attempted to support Plaintiff's arms as he went down to the floor. When Plaintiff is on the floor, it is difficult to determine precisely what happens because only the lower half of Plaintiff's body is in the range of the camera. The footage does reveal that Plaintiff began to kick his legs after lying still for nearly ten seconds. Once Plaintiff began resisting by kicking and or attempting to crawl away from the officers, Defendants placed his legs in restraints. The video shows that Defendants applied only the minimum amount of force necessary to restrain Plaintiff's legs. Although Plaintiff alleges in his summary of facts that Defendant Cooper dropped the backboard while transporting Plaintiff, Plaintiff does not allege any facts suggesting a malicious intent, nor does he request relief based on this claim. Further, there is no evidence that Plaintiff sustained any injuries.

The amount of force used by Defendants was reasonable, in light of Defendants' interest in maintaining discipline and order. It is undisputed that Plaintiff was resistant to orders given to him in the medical unit by the nurse and by Defendant Thurston. Despite Plaintiff's refusal to obey their commands, Defendants made no physical contact with Plaintiff until after he stopped walking and verbally engaged Defendant Reed in an emphatic manner. Plaintiff was assisted to his feet and Defendant Reed attempted to place him in wrist restraints and Plaintiff fell to the ground. Within less than ten seconds, Plaintiff began to resist, which resulted in the Defendants applying a minimal amount of force to restrain Plaintiff. Given that Defendants used no force until necessary to subdue Plaintiff and regain control over the situation, no reasonable jury could find that the force was used maliciously and sadistically to cause harm in violation of the Eighth Amendment.

Plaintiff complains that Defendants' actions caused him increased pain in his lower back, left leg, and arm. Plaintiff was seen in the medical unit after this incident complaining of arm and back pain. (Def's Ex. F at 0074-0076.) It was noted that he had no visible physical injuries, and that the nurse was unable to complete the assessment due to Plaintiff's "manic behavior," including "yelling and screaming at custody staff." *Id.* "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 37-38. Here, the minimal force applied to secure Plaintiff resulted in no discernible injuries. In addition, the fact that it was noted by medical staff that Plaintiff was yelling and screaming at custody further supports Defendants' contention that Plaintiff was noncompliant and disruptive.

Defendants have also submitted the report of the Inspector General of the Missouri Department of Corrections ("IG") in support of their Motion for Summary Judgment. (Doc. 79-6.) The IG investigated the use of force incident and concluded that Plaintiff was not abused by Defendants. The IG report states that the video footage "clearly showed that the incidents that were alleged by Hopkins *that were covered by video* did not occur." *Id.* at 9, emphasis added. While this report is not dispositive of the issues in the instant action, it is relevant that an outside agency conducted an extensive investigation, including interviews of Plaintiff and other witnesses and review of the video footage, and found that Plaintiff's allegations were unsubstantiated.

In sum, Plaintiff fails to meet either the objective or subjective requirement of his excessive force claim. The facts demonstrate that Defendants Reed, Thurston, and Cooper used a minimal amount of force required to restrain Plaintiff, resulting in no discernible injuries to Plaintiff. The Court is cognizant that Plaintiff was experiencing pain due to a pre-existing back

impairment, and that Defendants' actions in restraining him resulted in greater discomfort. The fact remains, however, that Defendants only became involved due to Plaintiff's failure to comply with staff orders. The Defendants' intent was not to maliciously cause harm but to secure Plaintiff's compliance with orders and restore order. The facts in this case are insufficient to prove that the amount of force used by Defendants was in violation of the Eighth Amendment, as there is no evidence that the force exceeded that needed to restore and maintain order and discipline and regain control of Plaintiff. Thus, the Court need not reach the question of qualified immunity.

## 2.      **Defendant Irby**

Plaintiff alleges that he is suing Defendant Irby because:

> [S]he was present and witnessed the reckless gross conduct of her co-workers['] attack and assault upon me and she did not take the proper steps to make an appropriate report about the unreasonable actions of the named officers (Males) in my complaint and petition. By failing to do something about the situation such as failing to make an exact report account in writing "for officials" about the incident, is habitual negligence of her, and under the color of the Mo. State law is a felony. In addition, COI Irby's act is a direct 8th Amendment violation to a prisoner's right regarding proper medical treatment.

(Doc. 48, ¶ 59.) Plaintiff's claim against Defendant Irby is best characterized as a failure to intervene claim.

To prove that a corrections officer failed to intervene to protect him from excessive use of force by another corrections officer, Plaintiff must show that a corrections officer used excessive force, that the other officer knew about the excessive use of force, and that the officer had the opportunity to intervene to prevent the excessive force by his compatriot but failed to do so. *Putnam v. Gerlock*, 639 F.2d 415, 423 (8th Cir. 1981).

In this case, the Court has found that Defendants Reed, Thurston, and Cooper did not use excessive force. Thus, Plaintiff's failure to intervene claim against Defendant Irby necessarily fails and summary judgment will be entered in favor of Defendant Irby.

## C.     Deliberate Indifference to Medical Needs

Plaintiff also claims that Defendants Reed, Thurston, Cooper, and Irby were deliberately indifferent to his serious medical needs. Plaintiff argues that it was apparent that he was in severe pain due to his back condition, and that the Defendants failed to obtain medical treatment for him despite his requests.

"To establish a claim of deliberate indifference to serious medical needs under § 1983, [Plaintiff] must demonstrate that he suffered from an objectively serious medical need and that [the officials] actually new of but deliberately disregarded the need." *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir. 2013). A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)).

Under the subjective prong, "the evidence must show that the officers recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." *Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009) (emphasis in original). Deliberate indifference constitutes more than mere negligence. *Farmer*, 511 U.S. at 835. Generally, the actor manifests deliberate indifference by "'intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed.'" *Krout*, 583 F.3d at 567 (quoting *Pietrafeso v. Lawrence Cnty.*, 452 F.3d 978, 983 (8th Cir. 2006)).

In this case, Plaintiff fails to demonstrate either prong of his deliberate indifference to medical needs claim. The alleged excessive force incident began when Plaintiff was in the medical unit for a scheduled medical call out. Plaintiff states in his Second Amended Complaint that "[t]here was an exchange of communication with the staff nurse and [] Dr. Hakala, because he was insisting that he had prescribed medication for me but under the assumption that I had 'received it,' and time for taking it was expired." (Doc. 48 at ¶ 6.) Plaintiff next states that he was "ordered to surrender the wheelchair." (*Id.* at ¶ 7.) These undisputed facts reveal that Plaintiff was seen in the medical unit and it was determined that he would not be prescribed medication and that he must return the wheelchair he had previously been issued. Under these facts, Plaintiff has not shown the presence of an objectively serious medical need as medical staff were of the opinion Plaintiff did not require medical treatment at the moment immediately preceding the use of force incident.

Even assuming Plaintiff's back condition was a serious medical need of which Defendants were aware because it was so obvious, Plaintiff cannot demonstrate that Defendants deliberately disregarded this need. Plaintiff attempted to self-declare an emergency medical condition while he was still in the medical unit waiting room. Defendant Thurston, however, had just observed firsthand Plaintiff's interaction with the medical unit staff and knew that no serious medical need was found.

Similarly, to the extent Plaintiff complained about pain or requested medical assistance during the alleged excessive force incident, all of the Defendants involved were aware that Plaintiff had been seen in the medical unit immediately preceding the incident. These facts do not show that Defendants intentionally interfered "with treatment or medication that has been prescribed." *Krout*, 583 F.3d at 567. To the contrary, medical staff had just treated Plaintiff and

had determined that no medication would be prescribed and that Plaintiff was to return the wheelchair. Plaintiff has not sued any of the medical staff for their actions in this matter. The correctional officer Defendants' failure to verify Plaintiff did not require additional medical treatment when his pain worsened during the use of force incident was at most negligent.

With respect to the use of force, the Court has found that Defendants used only a minimal amount of force required to gain control of Plaintiff. Plaintiff was seen by medical staff after the use of force incident and no visible injuries were noted. (Doc. 79-7 at 32, Rebekah B. Bogan's "Nurse Encounter Soap Notes.") Importantly, the examining nurse noted that the exam could not be completed due to Plaintiff's manic behavior as Plaintiff was "yelling and screaming at custody staff." *Id.* In sum, the evidence does not demonstrate that Defendants knew their conduct was inappropriate.

Plaintiff has failed to demonstrate the presence of an objectively serious medical need or that Defendants deliberately disregarded a serious medical need. Thus, Defendants are entitled to judgment as a matter of law on Plaintiff's deliberate indifference to a serious medical need claim.

## D.      Retaliation

Plaintiff alleges that Defendant Phillips-Reed retaliated against Plaintiff in violation of his First Amendment rights on two separate occasions for filing complaints about the use of force incident.

The filing of a prison grievance is protected First Amendment activity. *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). "'To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary

firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.'" *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). "Under the third prong, a plaintiff must show that the retaliatory motive was a 'substantial factor'" or 'but-for cause' of the adverse action." *Id.* (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010)).

**1.      November 26, 2012 Incident**

In the first alleged instance of retaliation, Plaintiff claims that Defendant Phillips-Reed retaliated against him because he filed a complaint against Defendant Reed who, at the time, was dating Defendant Phillips-Reed.  Plaintiff alleges that Defendant Phillips-Reed told him to come into her office when he was standing in the sally port area with other offenders, waiting to enter Housing Unit #3.  Plaintiff claims that Defendant Phillips-Reed pointed at a chair in her office and stated:  "Sit down."  (Doc. 48, ¶ 63.)  Plaintiff states that he told Defendant Phillips-Reed he was "fine standing," and Defendant Phillips-Reed responded by stating "I'm giving you a directive, sit down." *Id.*  Plaintiff then sat down in the chair.  Plaintiff alleges that Defendant Phillips-Reed stated "I don't like your attitude," and "falsely accused" him of being very loud in the sally port area and disrupting her while she was talking on the telephone in her office. *Id.* at 64.

Plaintiff's allegations fail to show an adverse action was taken against him that would chill a person of ordinary firmness from continuing in the activity.  It is undisputed that Defendant Phillips-Reed did not issue a conduct violation or discipline Plaintiff in any way for his conduct.  She merely told Plaintiff to keep his voice down.  Thus, Plaintiff's retaliation claim

fails and Defendant Phillips-Reed is entitled to judgment as a matter of law as to this instance of alleged retaliation

## 2.      Job Reassignment

Plaintiff next alleges that Defendant Phillips-Reed retaliated against him by reassigning him from his recreation job.

On December 20, 2012, Plaintiff was rehired in recreation.  Defendant Phillips-Reed subsequently learned of the reassignment and unassigned him from this position.[7]  Defendant Phillips-Reed states that she unassigned Plaintiff from the recreation position because he had been incorrectly assigned to recreation.  (Doc. 79-5/Def's Ex. E, Affidavit of Paula Phillips-Reed, at ¶ 12.)  Defendant Phillips-Reed states that Plaintiff should not have been working in recreation because Plaintiff had previously been removed from a recreation work assignment for failing to comply with work rules.  *Id.*  Defendant Phillips-Reed indicated that, when this occurs, inmates are not reassigned to the same job for safety and security reasons.  *Id.*

Defendant Phillips-Reed argues that she is entitled to summary judgment on Plaintiff's retaliation claim because her reassignment from his recreation position was not a disciplinary action, and because there is no evidence that retaliation was the motive for the reassignment.  To the extent Defendant is arguing that Plaintiff's removal from his recreation position was not an adverse action, the Court disagrees.  *See Spencer v. Jackson County Mo.*, 738 F.3d 907, 911 (8th Cir. 2013) (adverse actions which may show retaliation include "denial of privileges," or "acts worsening an inmate's working conditions").  Plaintiff was unassigned from a paid position.  In

---

[7]  Neither party provides the date on which Plaintiff was unassigned.  In his deposition, Plaintiff stated that he did not know the date on which he was unassigned but he believes it was in January and occurred within a month of his December 20, 2012 reassignment.  (Doc. 79-9 at 19-20, Def's Ex. H at 21-22.)  Plaintiff filed a Grievance Appeal regarding the incident on January 23, 2013.

addition, although Defendant Phillips-Reed refers to this action as a "reassignment," there is no indication that she in fact assigned him to another position at that time.

The Court, however, finds that Plaintiff has failed to present evidence sufficient to show that his removal from the recreation work assignment was motivated by retaliation. To avoid summary judgment, Plaintiff must submit "affirmative evidence [of] a retaliatory motive." *Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006). Significantly, Plaintiff does not dispute Defendant Phillips-Reed's contention that he failed to comply with work rules during his previous recreation work assignment. Instead, he merely denies that this was the reason for his removal from the position. In support of this allegation, Plaintiff contends that other inmates have been reassigned to the same jobs despite failing to comply with work rules in that area. (Doc. 114 at 12.) Plaintiff states that he "is in the process of obtaining the evidence of reassigned inmates to show that Defendant Phillips-Reed is lying to this Honorable Federal Court." *Id.* Plaintiff contends that he was unassigned because he filed complaints about the September 4, 2012 excessive force incident and Defendant Phillips-Reed was dating Defendant Reed at the time.

Plaintiff's bare allegations of retaliatory intent are insufficient to avoid summary judgment. Plaintiff does not dispute that he had violated work rules in the past, which caused him to fail to meet the criteria for employment in recreation. Defendant Phillips-Reed, as the FUM at the time, had the discretion to remove Plaintiff from the recreation position when she discovered he did not meet the criteria for the position. Plaintiff does not allege that Defendant Phillips-Reed made any statements at the time she removed him from the position that would suggest a retaliatory intent. Thus, Defendant Phillips-Reed is entitled to summary judgment on Plaintiff's retaliation claim.

**VI.     Conclusion**

In sum, the Court finds that the Defendants have shown that they are entitled to summary judgment as to all of Plaintiff's § 1983 claims against them.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Appoint Counsel (Doc. 116) is **denied**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 77) is **granted**.  A separate Judgment in favor of Defendants will accompany this Memorandum and Order.


Dated:  August 27, 2015                          _____
                                                 ABBIE CRITES-LEONI
                                                 UNITED STATES MAGISTRATE JUDGE